UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PARIS B GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-543 CAN |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On November 24, 2008, Plaintiff, Paris B. Graves ("Graves"), filed his complaint in this Court. On March 27, 2009, Graves filed an opening brief, in which he asks this Court to enter judgment in his favor or to remand this matter to the Commissioner. On May 21, 2009, upon the consent of the parties, this case was reassigned to the undersigned for all purposes. On June 10, 2009, Defendant, Social Security Administration ("SSA"), filed its response brief. On July 20, 2009, Graves filed a reply. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On May 7, 2004, Graves filed his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Tr. 14). Graves is insured for Disability Insurance Benefits through December 31, 2007. (Tr. 17). Graves claims he is entitled to benefits pursuant to Titles II and XVI of the Social Security Act. See 42 U.S.C. §§ 416(I), 423, 1381a.

On December 19, 2006, Graves appeared, with counsel, at a hearing before an

1

Administrative Law Judge ("ALJ"). (Tr. 14-29, 461-477). On February 26, 2008, the ALJ found that Plaintiff was not disabled because he could perform a significant number of jobs despite the limitations caused by his impairments. (Tr. 14-29). In particular, the ALJ found that Graves had not engaged in substantial gainful activity since February 10, 2004. (Tr. 17). Further, the ALJ found Graves to have severe impairments, although the ALJ never specifically identified which impairments were severe. (<u>Id</u>.). However, the ALJ found that Graves did not have any impairments that meet one of the listed impairments in 20 C.F.R. app.1, subpart P. § 404. (Tr. 17-18). Although the ALJ failed to make an explicit RFC finding, the ALJ found that Graves had "a residual functioning capacity that is compromised by nonextertional limitations." (Tr.20). Further, the ALJ specified that Graves: (1) would not be able to perform "work that imposes close regimentation of production;" (2) that "[c]lose and critical supervision . . . would produce unacceptable stress;" and (3) that Graves is "unable to address work that imposes intense contact with the public or strangers." (Tr. 26-27). The ALJ determined that Graves could not perform his past relevant work. (Tr. 27). However, the ALJ found that Graves could perform other jobs that exist in significant numbers in the national economy. (Tr. 27-28). Thus, the ALJ determined that Graves was not disabled. (Tr. 28). Accordingly, the ALJ denied Graves' applications for DIB and SSI. (Tr. 14-29).

      Graves appealed the ALJ's decision to the Appeals Council. (Tr. 30-33). The Appeals Council denied review; and as a result, the ALJ's decision became the Commissioner's final decision. (Tr. 6-9). <u>See</u> 20 C.F.R. § 404.981, <u>Fast v. Barnhart</u>, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on November 24, 2008, Graves filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties'

consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.   ANALYSIS**

   A.   Facts

Graves was 32 at the time of his alleged onset of disability and was 37 years old at the time of the ALJ's decision. (Tr. 27, 74). Graves has a high school education and his past relevant work includes work as an assembly line worker. (Tr. 27).

On February 10, 2004, Graves was admitted to the emergency room for injuries suffered in an automobile accident. (Tr. 106-110). Since the accident, Graves has engaged in ongoing mental health treatment for depression and has been hospitalized several times for gastrointestinal problems. (Tr. 148-168, 210-239, 252-256, 281-311, and 325-333). Despite the frequent visits to the hospital, however, objective medical tests repeatedly evidenced unremarkable or normal organ functioning, leading numerous doctors to conclude that Graves' physical complaints were out of proportion to the physical findings and his symptoms were probably secondary to depression and anxiety. (Tr. 210, 253, 272, 281).

For example, in March 2004, an x-ray of Graves' spine and an MRI of Graves' brain were unremarkable. (Tr. 144-45). Additional MRIs and CT scans performed during the same month were also determined to be negative for abnormalities. (Tr. 193, 195). During a hospitalization for intractable nausea in April 2004, an EEG showed no diagnostic abnormalities. (Tr. 415). Similarly, during another hospitalization, between June 30 and July 3, 2004, a CT scan of Graves' abdomen was unremarkable; and it was determined that Graves' physical symptoms were disproportionate to the objective findings and that Graves likely suffered from a stress disorder with some anxiety and depression. (Tr. 210). Between August 4 and August 7,

2004, Graves was again hospitalized for abdominal pain; but physical examination was unremarkable, and Graves was discharged with a diagnosis of exacerbation of irritable bowel syndrome, secondary to ongoing depression and anxiety. (Tr. 252). On August 18, 2004, Graves returned to the emergency room and, after a gastrointestinal work-up was negative for abnormalities, Dr. Boron opined that Graves' symptoms were related to depression and anxiety. (Tr. 272). Graves was additionally hospitalized between August 19 and August 24, 2004 for abdominal pain and vomiting, and the same medical results and conclusions were reached again. (Tr. 281). Finally, on September 11, 2004, Graves visited the emergency room and was provided a complete gastrointestinal and neurological exam. (Tr. 325-326). When the results from both returned normal, it was determined that Graves was experiencing symptoms of somatization, secondary to stress. (Id.).

On July 2, 2004, Graves was evaluated by social worker Regina Drury at the request of the admitting physician at the hospital. (Tr. 213-217). Ms. Drury diagnosed severe depression, recurrent; anxiety disorder, NOS; and insomnia related to the anxiety disorder. (Id.). She gave a Graves a Global Assessment of Functioning ("GAF") score of 40-60. (Id.).

Between February 16, 2004 and September 29, 2004, Graves saw social worker, Terrance Tanner ("Tanner"), on a weekly basis for mental health treatment. (Tr. 336). On July 16, 2004, Tanner conducted a mental evaluation of Graves. (Tr. 241-244). During the evaluation, Graves reported that he thought about dying on a daily basis, experienced problems sleeping, and heard voices. (Id.). Tanner diagnosed Graves with major depression, recurrent; panic disorder with agoraphobia; and a rule out diagnosis of attention deficient disorder; and Tanner estimated a GAF score of 50 to 55. (Id.).

4

On August 12, 2004, A. Majid Malik, M.D. ("Dr. Malik"), Graves' treating psychiatrist, began treating Graves for his depression. (Tr. 267- 269). During the initial consultation, Graves reported feelings of depression, decreased energy and poor concentration. (Id.). Graves articulated non-specific memory issues and noted that he had been somatically obsessed and had a number or irrational worries since the accident. (Id.). Graves also reported hearing "voices" for several weeks. (Id.). Pursuant to a mental status exam, Dr. Malik diagnosed Graves with major depressive disorder with psychotic features and probable post-concussive syndrome secondary to a motor vehicle accident; and Dr. Malik rated Graves' GAF score to be between 48-50. (Id.).

Graves continued to see Dr. Malik for periodic mental health treatment through January 31, 2006. (Tr. 432-447). Occasionally, such as on November 3, 2004 and on October 6, 2005, Graves reported that he was doing better. (Tr. 435, 442). In addition, on the last date of treatment, on January 31, 2006, Graves reported that he was doing well, had no psychosis, and was attending school to become a nurse. (Tr. 440.).

Early in treatment, on October 7, 2004, social worker, Tanner and Dr. Malik completed a "Report of Psychiatric Status" form as part of Graves' application for disability benefits. (Tr. 336-342). Graves was diagnosed with major depressive disorder with psychotic features; probable post traumatic stress disorder; and possible post-concussive syndrome secondary to a motor vehicle accident; and Graves was given a GAF score of 50. (Tr. 336). Mr. Tanner, the reporting source, reported several categories as normal but noted that Graves' speech was unusual when asked direct questions and noted that Graves responded with strange answers. (Tr. 337). Tanner noted that Graves had difficulty with sleep, excessive guilt, a lack of energy, and

5

that Graves articulated auditory hallucinations and experienced a loss of enjoyment and withdrawal. (Id.). Tanner concluded that Graves had poor judgment and abstract thinking due to his mental disorder. (Tr. 339). Tanner further opined that Graves could not be trusted on the job or to deal with the public and that Graves would probably get too agitated to be able to attend a simple work routine. (Tr. 340). In addition, Tanner concluded that Graves' statements were so odd at times that Graves would likely be fired unless he had no contact with co-workers. (Id.). Finally, Tanner concluded that Graves was too slow to keep up with a normal work pace. (Id.). (Id). At that time there were no signs of progress and Graves' prognosis was guarded. (Tr. 341). Dr. Malik co-signed the report and, thereby adopted the conclusions as his own. (Id.). Later, in a letter dated January 19, 2005, Dr. Malik opined that the chance of Graves returning to work in the next year was very low. (Tr. 430).

On October 22, 2004, Dr. K. Neville, a non-examining state agency psychologist, reviewed the file, and made a mental RFC assessment. (Tr. 345-362). Dr. Neville confirmed Dr. Malik's opinion that Graves has a difficult time in dealing with others. (Tr. 361). Dr. Neville also noted Dr. Malik's conclusions regarding diagnosis and GAF score, indicating moderate to severe impairments. (Id.). Dr. Neville noted that memory and concentration were fair during testing and that Mr. Graves was independent in his daily living activities. (Id.). Dr. Neville, therefore, concluded that "despite some social limitations, [Graves] still seems capable of performing simple repetitive tasks on a consistent basis." (Id.). On January 25, 2005, Dr. B. R. Horton, reviewed the evidence and affirmed Dr. Neville's opinion. (Id.).

  B.  <u>Standard of Review</u>

6

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court is not to substitute its own opinion for that of the ALJ's or re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626; Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). This standard is deferential but not entirely uncritical, for an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Golembiewski, 322 F.3d at 915. Alternatively, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

    C.    Graves's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Graves must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423 (d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform

any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920, Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app.1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform work in society at step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

Graves asserts two arguments regarding the ALJ's assessment of his case. First, Graves alleges that the ALJ improperly rejected the opinion of Graves's treating psychiatrist, Dr. Malik, diminishing the weight afforded to Dr. Malik's opinion for reasons that were insufficiently-articulated and inappropriate under the Social Security regulations. Second, Graves contends that the ALJ improperly evaluated his credibility, failing to correctly apply the established factors for assessing credibility.

       1.      The ALJ's evaluation of the opinion of Graves' treating physician is insufficiently articulated and, therefore, not supported by substantial evidence.

Graves contends that the ALJ erred by not properly weighing the evidence of record, in particular, the findings of Dr. Malik. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p; S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870. However, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Id. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence that the ALJ must consider. Hofslien, 439 F.3d at 377. Regardless, an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p.

To begin, this Court commends the ALJ for his thorough presentation of the record facts in regards to Graves' medical and mental conditions. In particular, this Court notes the ALJ's eight page discussion of Graves' residual functioning capacity (RFC), which includes an extensive outline of the medical evidence proffered in support of Graves' disability claim. Such an outline of the facts suggests that the ALJ carefully considered the evidence and gave particular attention to Graves' claims of disability.

In light of such a thorough discussion of the record evidence, however, this Court is

9

particularly struck by the truncated analysis and explanation that the ALJ proffered in support of his conclusion regarding the weight afforded to the opinion of Graves' treating physician, Dr. Malik. After nearly seven pages of introducing the record evidence, including a review of the opinions of Dr. Malik and social worker Terrance Tanner, the ALJ abruptly and conclusively stated,

> The psychological reports have not been accompanied by more than notes of medical services and do not reflect careful treatment and testing of the claimant. None of them, including the above opinion, reflect a forensic analysis of the claimant's behavior. Accordingly, they do not support a finding that the claimant has more than a moderate mental impairment.

See Tr. at 26.

Social worker, Terrance Tanner, does not qualify as a treating source under the regulations; and, therefore, the ALJ need not have afforded his opinion controlling weight. See SSR 06-03p; Wools v. Astrue, 2009 WL 1148219 at *11- (S.D. Ind. 2009). However, there is no dispute that Dr. Malik qualified as a treating source. The regulations define a treating source as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. As such, the ALJ had a duty to provide good reasons and sufficiently articulate his reasoning for discounting Dr. Malik's opinion, noting either internal consistencies or inconsistences within the record as a whole, prior to affording Dr. Malik's opinion lesser weight. 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion."); Clifford, 227 F.3d at 870; Hofslien, 439 F.3d at 377; Cichon v. Barnhart, 222 F.Supp.2d 1019, 1030 (N.D.Ill. 2002).

In the immediate case, the ALJ faulted the type of evidence used to support Dr. Malik's opinion as justification for the ALJ's decision to discount the weight afforded to Dr. Malik's opinion. In particular, the ALJ faulted Dr. Malik's reliance on "notes of medical services" rather than "careful treatment and testing" and a "forensic analysis of the claimant's behavior." However, this Court finds this analysis to be puzzling given the type of evidence used to support Dr. Malik's opinion. In particular, a closer look at Dr. Malik's opinion reveals that the opinion, as cited by the ALJ, was included as part of a "Report of Psychiatric Status" form. In the introductory paragraph of the form, the form identifies that the purpose of the form is to allow "Social Security Administration psychiatrists/psychologists to identify mental impairment, assess its severity, and to determine the specific restrictions in functioning." See Tr. 336. In addition, the form distinguishes itself from mere treatment notes and admonishes its users to describe "objective findings" and to support all medical opinions with "objective clinical data." Id.

Given that Dr. Malik's opinion was presented in the context of the Administration's own form for objectively determining the severity of alleged impairments, it is difficult to determine what other types of evidence the ALJ wanted to see in the record to support Dr. Malik's conclusions. Certainly, the ALJ was not looking for additional treatment notes from treating psychiatrists and social workers and counselors to objectively establish Dr. Malik's conclusions, as the ALJ's own discussion of the evidence makes clear that such evidence was in abundance throughout Graves' record file. Similarly, this Court is confused by what type of evidence would qualify under the ALJ's vague articulation of "treatment and testing" or "forensic analysis." Mental health professionals rely heavily on ongoing treatment notes to establish

11

diagnostic and treatment plans for their patients; and the Administration itself, relies on the "Report of Psychiatric Status" form to objectively quantify the severity of alleged impairments. It is hard, then, for this Court to determine why the ALJ found the evidence proffered to be insufficient and what additional forms of evidence the ALJ would have considered to be a sufficient bolster for Dr. Malik's opinion.

Indeed, this lack of articulation by the ALJ makes review of the ALJ's decision nearly impossible. The law in this regard is clear. An ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p. Although this Court is not troubled by the ALJ's thorough articulation of the record evidence, this Court finds the ALJ's analysis of that evidence, in particular the weight afforded to Dr. Malik's opinion, to be insufficient to permit review .

Accordingly, this Court finds that the ALJ failed to sufficiently articulate his reasoning in this regard and that remand is, therefore appropriate on this issue. This Court does not imply that the ALJ's decision to afford Dr. Malik's opinion lesser weight is wrong. Rather, this Court concludes that the ALJ must more carefully articulate his analysis of the opinion to, at least, explain why the record evidence in support of Dr. Malik's opinion was deemed lacking and what particular forms of evidence that the ALJ believes is necessary to justify Dr. Malik's conclusions.

2. <u>The ALJ's determination of Graves's credibility is supported by substantial evidence.</u>

Graves additionally alleges that the ALJ's determination of Graves' credibility was erroneous. Because an ALJ is in a special position where he can hear, see, and assess witnesses,

his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). See also Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006)(holding "[o]nly if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.")(citations omitted). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an the individual's allegations have been considered or that the individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004); Golembiewski, 322 F.3d at 915; Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 96-7p.

In the immediate case, the ALJ found that Graves' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." See Tr. 19. This Court begins its analysis, giving substantial deference to the ALJ's credibility determination. See Jens, 347 F.3d 209 at 213 (credibility determinations only overturned if patently wrong). As such, this Court limits it review to determining whether the ALJ's opinion is supported by substantial evidence in the record and whether the ALJ adequately articulated the reasons for his conclusions. Haynes, 416 F.3d at 626; Zurawski, 245 F.3d at 887.

13

After reviewing the ALJ's opinion, this Court finds the ALJ's credibility determination to be supported by substantial evidence. In contrast to the ALJ's analysis of the weight afforded to Dr. Malik's opinion, the ALJ clearly articulated and adequately discussed the reasons for supporting his credibility finding. For instance, the ALJ noted that, although Graves had alleged numerous physical complaints resulting from his car accident, several of Graves' physicians had found Graves' alleged physical complaints to be unsupported by objective medical evidence. See Tr. 19.

In addition, the ALJ faulted the manner in which Graves' testimony was presented. Specifically, the ALJ explained that, at several times during the hearing, Graves' demeanor appeared "taciturn;" and the ALJ found Graves to be "not forthcoming," "vague" and "not spontaneous" in response to the ALJ's questioning. See Tr. 18-19. In particular, the ALJ noted a difference between Graves' "voluble" and inspired responses to "leading questions" by Graves' attorney and Graves' "reticence to respond" to the ALJ's questions about Graves' life and condition. In his opinion, the ALJ clearly articulated that this contrast in demeanor and responsiveness "prevent[ed] significant reliance upon the claimant's contribution during the hearing." Id.

Finally, the ALJ noted inconsistencies within Graves' testimony. Specifically, the ALJ doubted Graves' uncanny ability to clearly describe his seizures, contending that Graves would likely have been unconscious throughout each seizure and, therefore, should have been unable to provide the level of detail that Graves put forth at the hearing. Id. In addition, the ALJ noted, later in the opinion, that there was no evidence of ongoing treatment for a seizure disorder in the record. See Tr. 22. In addition, the ALJ reasoned that Graves' statements regarding seizures and

14

frequent panic attacks were inconsistent with Graves' continued ability to drive.  See Tr. 19.

Such discussion of the ALJ's analysis suffices to create the requisite evidentiary support and logical basis that is necessary for this Court to uphold the ALJ's credibility determination. See Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003).  This Court can clearly discern, from the text of the ALJ's opinion, the reasons behind the ALJ's credibility determination.  Further, when placed in context with the ALJ's thorough outline of the record evidence, this Court can easily see how each of the ALJ's evaluations find support in the record. As such, this Court concludes that the ALJ's credibility determination is substantially supported and sufficiently articulated.

### III. CONCLUSION

The ALJ's determination that Graves' treating physician was not entitled to controlling weight was insufficiently articulated and, therefore, not supported by substantial evidence.  The ALJ's analysis of the claimant's credibility, however, was supported by substantial evidence. Therefore, Graves' motion for remand is **GRANTED IN PART** and **DENIED IN PART**.  [Doc. No. 11].  This Court **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), and the case is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED**

Dated this 25th Day of August, 2009.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge